IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONNA JORDAN,                      )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CIVIL ACT. NO.  2:14cv198-WKW
                                   )                 (WO)
ALABAMA DEPARTMENT OF              )
PUBLIC HEALTH and STATE OF         )
ALABAMA PERSONNEL                  )
DEPARTMENT,                        )
                                   )
        Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE and ORDER

## I.  INTRODUCTION

In her complaint, *pro se* plaintiff Donna Jordan ("Jordan") alleges that she was

discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. §§ 1981 and 1983 when she was

denied promotions and a position reclassification based on her race.[1]  She also complains

---

[1] In her complaint, Jordan alleged that the she was discriminated against in the assignment of job duties and that she was disciplined because of her race.  (Doc. # 1, Compl. at 7, ¶ 43 and 2, ¶ 2).  However, she points the court to no evidence, and a review of the record does not suggest, that the assignment of her job duties was based on her race, or that she was subject to any discipline because of her race.  The onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.  1995); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).  Accordingly, the court concludes that Jordan has abandoned any claims that she was subjected to discriminatory assignment of duties or discipline.

In addition, in opposition to summary judgment, Jordan asserts that she was subjected to retaliation by her employer, the Department of Public Health.  She did not raise a retaliation claim in her complaint, and she cannot now amend her complaint to add a new claim by raising the claim in her brief in opposition to summary judgment.  *See Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314-15 (11th Cir. 2004).  *See also*, *Austin v. City of Montgomery*, 196 Fed. App'x 747, 753 (11th Cir. 2006).  Consequently, the court concludes

that she was subjected to a racially hostile work environment.  She names as defendants her employer, the Alabama Department of Public Health ("Department of Public Health"), and the State of Alabama Personnel Department ("Personnel Department").  The court has jurisdiction of the plaintiff's claims pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant in 42 U.S.C. § 2000e–5.

Now pending before the court are the defendants' motions for summary judgment (docs. ## 85 & 87) and the Department of Public Health's motion to strike evidentiary materials (doc. # 94).  The plaintiff has filed responses in opposition to the motions (docs. ## 90 & 91).  After careful review of the motions, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials, the court concludes that the defendants' motions for summary judgment are due to be GRANTED, and this case is due to be dismissed.

## II.  THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

---

that Jordan has not properly pled a retaliation claim in this action.

[2]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination."  FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id.* at 322-324.

Once the defendants meet their evidentiary burden and demonstrate the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in [her] own pleading; rather, [her] response must . . . set out specific facts showing a genuine [dispute] for trial.").   A genuine dispute of material fact exists when the nonmoving party

3

produces evidence that would allow a reasonable fact-finder to return a verdict in her favor. *Greenberg*, 498 F.3d at 1263.

To survive the defendants' properly supported motions for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" establishing a violation of Title VII or 42 U.S.C. § 1981. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363

F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts,

a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

## III. FACTS[3]

The pertinent material facts are undisputed. Jordan began her career as a social worker with the Department of Public Health at the Montgomery County Health Department on March 25, 2002. (Doc. # 88, Ex. A at 16; Ex. B at 1, ¶ 2). She holds a bachelor's degree in social work and a master's degree in public administration. (Doc. # 88, Ex. A at 15). She transferred to the Center for Emergency Preparedness and was promoted to Public Health Research Analyst I on April 2, 2005. (Doc. # 88, Ex. B at 1, ¶ 3). She then accepted a lateral transfer to the Bureau of Professional and Support Services on March 18, 2006. (Doc. # 88, Ex. A at 19; Ex. B at 2, ¶ 4). Jordan's role as a research analyst "was to assist [her supervisor] with the [Prescription Drug Monitoring] program. (Doc. # 88, Ex. A at 20).

---

[3] At this stage of the proceedings, this court takes the facts alleged by Jordan as the non-movant as true and construes them in the light most favorable to her. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party" and 'resolve all reasonable doubts about the facts in favor of the nonmovant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations. Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"). Thus, the facts set forth herein are drafted relying on the undisputed facts and construing the facts in the light most favorable to the non-moving party, Jordan.

In May, 2008, Jordan was promoted to a Research Analyst II position, and became the program manager for the Prescription Drug Monitoring Program ("PDMP").  (Doc. # 88, Ex. A at  21, 23; Def's Ex. B at 2, ¶ 5).

> As Program Manager for PDMP, Jordan's responsibilities are to "manage the State's Prescription Drug Monitoring Program, which will include management and analysis of the database, public and professional training, Advisory Council meetings, receipt of funds and preparing reports under the direction of the pharmacy unit director.   This position will assist the pharmacy director in ensuring compliance with the Prescription Drug Monitoring Program law."   This position will also manage budget expenditures for the PDMP.

(Doc. # 88, Ex. B at 2, ¶ 6).

Jordan received "exceeds standards" performance appraisals, and has received no discipline during her employment.  *See* Doc. # 88, Ex. B, Att. 6.  She remains employed by the Department of Public Health as the PDMP Manager.

In October 2011, Jordan approached her reviewing supervisor, Jamey Durham ("Durham"), then Deputy Director of the Bureau of Professional and Support Services, about reclassifying her position.  (Doc. # 88, Ex. B at 3, ¶ 8; Ex. D at 2, ¶ 4).  Jordan sought a reclassification from a Research Analyst II position to Health Services Administrator II position because her work load had increased, and she was managing the "day-to-day operations of a statewide program."   Durham declined to request that her position be reclassified because, according to him, there had been no change in her job duties and responsibilities since she began in the position in 2008.  (*Id*.)

Jordan filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 19, 2012 alleging race discrimination. The EEOC issued a right to sue letter on December 23, 2013, and this lawsuit followed on March 21, 2014.

## IV. DISCUSSION

### A.   Motion to Strike

Before addressing the defendants' motions for summary judgment, as an initial matter, the court disposes of the Department of Public Health's motion to strike (doc. # 94). The defendant requests the court strike certain information relied on by the plaintiff in opposition to the pending motions for summary judgment. The defendant argues that several of the plaintiff's evidentiary submissions are not admissible and should be stricken because they are not authenticated; they are self-serving and conclusory; or they do not meet the requirements of FED. R. CIV. P. 56.[4] The court is capable of sifting through the plaintiff's evidentiary submissions and considering only those portions which are either based on personal knowledge or are not being offered for the truth of the matter asserted. To the extent that the material contains information not based on personal knowledge, the court has not considered that material in resolving the motions for summary judgment. Furthermore, the defendant has not asserted that it has been prejudiced by the plaintiff's evidentiary submissions, and thus, the defendant's motion to strike will be denied.

---

[4] FED. R. CIV. P. 56(c)(4) requires that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated."

### B. Personnel Department's Motion for Summary Judgment

Defendant Personnel Department asserts it is entitled to summary judgment because (1) it enjoys Eleventh Amendment immunity from suit, and (2) it is not Jordan's employer for purposes of Title VII.  The court agrees on both counts.

The law is well established that the Personnel Department, as a department of the state, is absolutely immune from suits for monetary damages.  *Papasan v. Allain*, 478 U.S. 265 (1986) (The Eleventh Amendment to the Constitution of the United States proscribes suits at law and in equity against a state, its agencies or departments unless the state consents to be sued).  The courts have recognized two exceptions to Eleventh Amendment immunity which do not apply to the facts of this case.  First, Congress can abrogate Eleventh Amendment immunity.  *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)).  Second, a state's legislature may waive Eleventh Amendment immunity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  However, Congress has not abrogated Eleventh Amendment immunity in 42 U.S.C. § 1981 claims, and the state of Alabama has not waived its immunity in this case.  *See Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 256 (2001).

> "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed. 2d 67 (1984).  Neither of these exceptions apply in this case.

*Carr*, 916 F.2d at 1525 (alterations in original).

Consequently, because the plaintiff seeks only monetary damages against the Personnel Department, the court concludes that the plaintiff's § 1981 and 1983 claims are barred by the doctrine of sovereign immunity.

To the extent that Jordan attempts to bring Title VII discrimination claims against the Personnel Department, the Department's motion for summary judgment is due to be granted because the Department is not her employer. Title VII prohibits discrimination against "any individual" with regard to that individual's terms and conditions of employment or application for employment. *See* 42 U.S.C. § 2000e-2(a) (1994).[5] "[O]nly those plaintiffs who are "employees" may bring a Title VII suit." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). Jordan does not dispute that the Personnel Department is not her employer, and she does not allege or point the court to any contrary facts that suggest she is employed by the Personnel Department. Consequently, the Personnel Department is not subject to suit under Title VII because Jordan has failed to establish a genuine dispute of material fact concerning whether the Personnel Department is her employer. Thus, any Title VII discrimination claims against this defendant are due to be dismissed.

---

[5] 42 U.S.C. § 2000e-2(a)(1) makes it unlawful for an *employer* "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;..."

## C.  The Department of Public Health's Motion for Summary Judgment

The plaintiff alleges that she has been discriminated against based on her race in violation of Title VII[6] and 42 U.S.C. § 1981.[7]  The same prima facie elements required to prove a 42 U.S.C. § 1981 discrimination claim are also required to prove a Title VII discrimination claim.  *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir. 1991).  The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII and section 1981.  *See Richardson v. Leeds Police Dep't,* 71 F.3d 801, 805 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir. 1994).  Thus, the court will not discuss these claims separately.

In an employment discrimination case, Jordan bears the ultimate burden of proving that the Department of Public Health intentionally discriminated against her.  *Texas Dep't.*

---

[6] 42 U.S.C.A. § 2000e-2(a)(1) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

[7]   Section 1981 provides, in pertinent part:

(a)  All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . .

(b)  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

*of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  This Circuit has consistently held that federal courts, in resolving discrimination claims, do not review the accuracy of an employer's employment decision.  *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (explaining that "Title VII is not a shield against harsh treatment at the workplace. . .").

To defeat the defendant's motion for summary judgment, Jordan must first establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof.  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Jordan has not presented any direct evidence of discrimination nor does she rely on statistical evidence to support her discrimination claims.[8]  Thus, the court turns to whether Jordan has established circumstantial evidence of discrimination.

The Supreme Court in *McDonnell Douglas Corp., supra*, created the now familiar framework for the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Once Jordan establishes a prima facie case, the

---

[8] A plaintiff may state a claim for discrimination by alleging facts that, if believed, would qualify as direct evidence of the employer's intent to discriminate on the basis of gender.  *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257 (11th Cir. 2012).  Direct evidence of discrimination "is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Department of Public Health then has the burden of producing "some legitimate, non-discriminatory reason" for the challenged employment action. *See McDonnell Douglas*, 411 U.S. at 802. If the Department of Public Health satisfies this burden, Jordan must then establish, by a preponderance of the evidence, that the articulated reasons were mere pretext for intentional discrimination. *Burdine*, 450 U.S. at 256. In the summary judgment context, Jordan need only present evidence from which a trier of fact could conclude the defendant intentionally discriminated against her on a constitutionally impermissible basis.

In her complaint, Jordan alleges that Department of Public Health failed to promote her to the position of Assistant Pharmacy Director because of her race in violation of Title VII and 42 U.S.C. §1981. Liberally construing her complaint,[9] she also complains that she has been subjected to disparate treatment based on her race because the Department of Public Health failed to reclassify her position from Research Analyst II to a Health Services Administrator II position. Jordan compares herself to Tim Hatch, Robert Kurtt and Kuma Girdner.[10] According to Jordan, these employees' positions were reclassified to Health Services Administrator II positions, but Durham refused to request that her position be reclassified. She contends that his refusal to request reclassification is due to her race.

---

[9]  The plaintiff pursues this action *pro se* and her pleadings are not a model of clarity.

[10]  The Department of Public Health compares Jordan to Tim Hatch and Robert Kurtts but it also compares her to Jonathan Edwards, Elizabeth Cagle and Belinda Hensley. Jordan does not refer to or mention Edwards in her complaint or in her response to summary judgment. With respect to Cagle and Hensley, in her deposition, Jordan specifically disavows that these women are her comparators. (Doc. # 88, Ex. A at 193). Consequently, the court does not consider Edwards, Cagle or Henlsey as comparators to Jordan.

Finally, she alleges that she was subjected to a racially hostile work environment.  The court addresses each claim seriatim.

       *1.*     *Discriminatory Promotion Claim - Assistant Pharmacy Director*

Jordan alleges that she was denied a promotion to the position of Assistant Pharmacy Director/Deputy Pharmacy because of her race.  The Department of Public Health argues that Jordan cannot establish a prima facie case of race discrimination with respect to this position because she was not qualified for the position.  While Jordan admits that she did not meet the qualifications for the position, she asserts that she could do the job.

The court quickly disposes of this claim.  Jordan has failed to demonstrate a prima facie case of race discrimination.   To establish a prima facie case of discriminatory promotion, Jordan must demonstrate (1) that she is a member of a protected class and (2) that she was qualified and applied for the promotion (3) but she was rejected despite her qualifications (4) in favor or an equally or less qualified employee who was not a member of her class.  *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1089 (11th Cir. 2004).  *See also  Jefferson v. Burger King Corp*., 505 Fed. App'x 830, 833 (11th Cir. 2013).  It is undisputed that the Assistant State Pharmacy Director position required "[g]raduation from a recognized school of pharmacy" and "[p]ossession of a license to practice pharmacy issued by the  Alabama State Board of Pharmacy."  (Doc.# 88, Ex. B, Att. 8). Jordan concedes that she did not meet the qualifications for the position of Assistant Pharmacy Director/Deputy Pharmacy  because she has not graduated from a recognized school of

pharmacy and she is not a licensed pharmacist in the State of Alabama.  (Doc. # 88, Ex. A at 131).  Consequently, she has failed to establish a prima facie case of discrimination, and the defendant's motion for summary judgment on this claim is due to be granted.

> 2.  *Disparate Treatment - Reclassification to a Health Services Administrator II position.*

To prevail on a Title VII employment discrimination claim, a plaintiff must be able to show that her employer intended to discriminate against her *on the basis of race*.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327-28 (11th Cir. 2011).  This is generally accomplished by a demonstration that the defendant treated the plaintiff differently than other similarly-situated people who were not in the plaintiff's protected class.  *Id*.

Jordan alleges that she was treated differently from other employees when Durham refused to reclassify her position.  The court construes this claim as a disparate treatment claim.[11]  To establish a prima facie case of disparate treatment under Title VII, Jordan must show that (1) she belongs to a protected class; (2) she was qualified to do her job; (3) she

---

[11]  The defendant asserts that Jordan cannot establish a prima facie case of discriminatory promotion because she did not apply for the three reclassified positions. The defendant is correct that to establish a prima facie case of discriminatory *promotion*, Jordan must demonstrate (1) that she is a member of a protected class and (2) that she was qualified and applied for the promotion (3) but she was rejected despite her qualifications (4) in favor or an equally or less qualified employee who was not a member of her class.  *Jefferson v. Burger King Corp*., 505 Fed. App'x 830, 833 (11th Cir. 2013).  *See also Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1089 (11th Cir. 2004).

However, the defendant misconstrues the plaintiff's claim.  The court does not read Jordan's complaint as asserting a claim that she was denied promotions to the three specific Health Services Administrator II positions after the positions were reclassified.  Throughout her pleadings, Jordan consistently complains that, although she requested that her position be reclassified to an Health Services Administrator II position, the request was never made.  Her disparate treatment claim rests on the theory that her position has not been reclassified, and her supervisor will not request the position be reclassified, because she is African-American.

was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably.  *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The parties do not dispute that Jordan is African-American.  They do disagree, however, as to whether similarly situated persons outside of Jordan's protected class received more favorable treatment than her.

The question of whether the plaintiff is similarly situated with non-minority employees is crucial.  *See Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988) (citing *Kendall v. Block*, 821 F.2d 1142 (5th Cir. 1987) (holding that Caucasian employees with a different grade level were not similarly situated with the plaintiff)).[12] After careful review, the court concludes that Jordan has failed to come forward with any evidence that she was similarly situated to others at the Department of Public Health.

Jordan compares herself to Tim Hatch, Robert Kurtts and Kuma Girdner.  She argues that these employees were treated more favorably than her because their positions were reclassified while her position was not.  Jordan asserts that when these employees were selected to fill the positions after reclassification, they, in essence, received promotions.[13]

---

[12]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[13]  Jordan does not argue that she was denied promotions to the reclassified positions because she admits that she did not apply for the positions after reclassification.  *See* Doc. # 91 at 15 "The Plaintiff did not apply for a CEP position.  The Plaintiff requested a promotion (classification reallocation) from Research Analyst II to Health Services Administrator II. . ."

According to Jordan,

> although "ADPH may be allowed to reclassify or reallocate a position, it does not have to be done"; however, it was done for three Caucasians within the Plaintiff's Bureau under the supervision of Jamey Durham, Bureau Director. These reallocations took place during the same time frame of the Plaintiff filing an EEOC due to racial discrimination.  The three Caucasians are: Tim Hatch-Caucasian, Robert Kurtts-Caucasian, and Kuma Girdner (Caucasian). Specifically, Kuma Girdner (Caucasian) received a reallocation from the Public Health Research Analyst II to Health Services Administrator II on May 9, 2013.  Ms. Girdner received the same promotion the Plaintiff (African-American) requested prior to filing a discrimination case with the EEOC and lawsuit with the court.  The Plaintiff was reachable on the same Health Services Administrator II register that all three Caucasians received their promotions/reallocations.

(Doc. # 90 at 6; Doc. # 91 at 7).

It is undisputed that the three reclassified positions were in the Center for Emergency Preparedness and were not in Jordan's Prescription Drug Monitoring Program, the Pharmacy Unit, or the Office of Professional and Support Services.  More importantly, however, Jordan presents no evidence that the job responsibilities or duties of the three reclassified positions were similar to her job responsibilities and duties.  It is well-settled law that employees with different jobs and responsibilities are not similarly situated.  *See*, *e.g.*, *McDonnell v. Gonzales*, 151 Fed. App'x 780, 782-83 (11th Cir. 2005); *Randall v. Unitech Systems, Inc.*, 243 F.Supp.2d 822 (N.D. Ill. 2003); *Ponticelli v. Zurich Am. Ins. Group*, 16 F.Supp.2d 414 (S.D.N.Y. 1998).  In fact, in opposition to summary judgment, Jordan provides the memorandum requesting reclassification of Girdner's position which demonstrates that the reclassified position is not similarly situated to hers. (Doc. # 91, Ex.

17

C.).  The request for reclassification was based on the following responsibilities and duties:

> The Health Services Administrator II position will serve as the National Incident Management System (NIMS) Compliance Officer for ADPH.  This employee will ensure ADPH employees completion of NIMS training courses consistent with their emergency responsibilities outlined by the department.  This individual will also serve as point of contact in the completion and submission of NIMS Metrics.

> This position will update and maintain the Hospital Mass Casualty assessments to include the development and implementation of a statewide healthcare system assessment the results of which will provide reports to convey an accurate picture of the capability of Alabama's hospitals to respond to public health emergencies.  In addition to Mass Casualty, this position will also serve to maintain the Emergency Support Function-8 (ESF-8) assessment and improvement plan.  In working with other center staff in the development of an ESF-8 All Hazards Assessment for completion by the counties and public health areas, the department will be able to ascertain accurate information regarding emergency resources and the preparedness capabilities of response partners.

> Supervision of the At Risk Population/Volunteer Coordinator will be an essential duty of this position.  This will ensure that volunteers are recruited, trained, and managed in accordance with federal grant requirements and departmental needs.  This supervisor will also ensure that the at risk population in Alabama is served in accordance with Health and Human Services standards and the Department of Justice requirements.

(*Id*.)

It is clear that the one reason for the reclassification to Health Services Administrator II position was to account for the supervision of the At Risk Population/Volunteer Coordinator.  It is undisputed that Jordan does not supervise any other employees. Consequently, her position is not similarly situated to this one.

Moreover, Jordan's mere belief that her position's responsibilities and duties were

similar to the reclassified positions is insufficient to demonstrate a prima facie case of discrimination. Jordan points to the court to no evidence that the job duties of Hatch, Kurtts and Girdner were substantially similar to her duties. Thus, this court concludes that Jordan has failed to demonstrate that her position was similarly situated to the positions that were reclassified. At best, Jordan presents nothing more than unsubstantiated allegations and conclusory statements in opposition to the defendant's motion for summary judgment with respect to her differential treatment claim. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value). *See also Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976) (conclusory statements, unsubstantiated by facts in the record, will normally be insufficient to defeat a motion for summary judgment).

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992).

In her complaint, Jordan also complains that she was denied "promotions in classifications." (Doc. # 1, Compl. at ¶¶ 2, 19, 32 & 43). Properly construing her

discriminatory promotion claim, Jordan asserts that she was denied a promotion to a Health Services Administrator II position because of her race.  This claims fails it is premised on rank speculation.  Essentially Jordan seems to contend that if her position had been reclassified she would have been promoted. As earlier noted, her discriminatory reclassification claim fails.  Her promotion claim, therefore, also fails because it is contingent on facts which never occurred.  Discrimination claims cannot be based on hypothetical constructs.

After careful review, the court concludes that Jordan has failed to demonstrate a prima facie case of discrimination under either a disparate treatment or discriminatory promotion theory.  The defendant's motion for summary judgment with respect to Jordan's racial discrimination claim is due to be granted.

### 3. *Hostile Work Environment Claim*

Under the law of this circuit, a plaintiff establishes a prima facie claim of racially hostile work environment claim by showing:  (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on her race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatory abusive working environment; and (5) a basis for holding the defendant liable.[14]  *Miller v. Kenworth of Dothan, Inc.*, 277

---

[14]  Although Title VII does not expressly refer to claims based on a racially hostile work environment, the Supreme Court and the Eleventh Circuit recognize that Title VII is an expansive concept which "sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination." *Mendoza v. Borden*, 195 F.3d 1238, 1243 (11th Cir. 1999) (citing *Henson v. City of Dundee*,

F.3d 1269, 1275 (11th Cir. 2002).  *See generally Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc).

To establish a hostile work environment, harassment must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Mendoza*, 195 F.3d at 1245.  A plaintiff must establish that the harassment is sufficiently severe or pervasive "to ensure that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory 'conditions of employment'" and to ensure that the courts are not creating a "general civility code." *Gupta v. Fla Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).

To be successful, "a plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive." *Id.*  Consequently, "[t]o constitute an actionable hostile environment, conduct must be *objectively* sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (emphasis added).  It is the fourth element – conduct sufficiently severe or pervasive to alter the conditions of employment – "that tests the mettle of most . . . harassment claims." *Gupta,* 212 F.3d at 583.

---

682 F.2d 897, 901 (11th Cir. 1982)).  *See also, Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993).  In applying these standards, courts utilize the same analytical framework for evaluating sexual and racial harassment claims.  *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  *See also Rogers v. E.E.O.C.*, 454 F.2d 234 (5th Cir. 1971).  Consequently, the court will not distinguish between cases.

> Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance' and whether it unreasonably interferes with an employee's work performance.'"

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).  *See also Mendoza*, 195 F.3d at 1246 (citations omitted); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23).

> In her complaint, Jordan asserts that her direct supervisor and the Bureau Director

> utilize verbal intimidating comments during conversations about Plaintiff's concerns regarding her working outside of her classification. The comments include, but are not limited to, the following:  "you look like hell," "your supervisor gives you too much latitude,""be thankful you have a job," "we don't know how we are going to pay your salary,""everyone works outside of their classification and you are to perform as if you are the Director of the program."

(Doc. # 1, Compl. at 5-6 at ¶ 33).  These are the only comments to which the plaintiff points in support of her hostile work environment claim.[15]

Viewing the evidence in the light most favorable to her, the court concludes that Jordan has not established a prima-facie race-based hostile work environment claim

---

[15] While Jordan recites that she as subjected to a "discriminatory work environment," she alleges absolutely no facts and makes no argument in response to the defendant's motion for summary judgment on this claim.  She does not point to or otherwise provide the court with any evidence to substantiate her allegations of a racially hostile work environment.  The burden is on the parties to formulate arguments and grounds alleged in the complaint but not relied upon in responding to a motion for summary judgment are deemed abandoned.  *See Road Sprinkler*, 10 F.3d at 1568.  Accordingly, the court could conclude that Jordan has abandoned her hostile work environment claim, and grant the defendant's motion for summary judgment on this claim but, out of an abundance of caution, because the plaintiff is *pro se*, the court addresses the merits of her claim.

because the record contains no evidence that the conduct about which Jordan complains was sufficiently severe or pervasive to affect a term or condition of her employment and create a hostile or abusive work environment.  Applying the requisite factors to the totality of these events, the court concludes that the plaintiff has failed to establish a genuine issue of material fact regarding whether the comments about which she complains were objectively sufficiently severe or pervasive to alter the terms and conditions of her employment and create a hostile or abusive working environment.  Jordan presents no evidence that she was hindered in her ability to do her job as a result of these comments.  In fact, all evidence demonstrates that Jordan excelled at her job.  This is not a situation where "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).  The comments to which Jordan points are simply not so severe or pervasive as to render the workplace objectively hostile or abusive.

Jordan's hostile work environment claim also fails because Jordan has failed to demonstrate that the statements about which she complains were based on her race.  To survive the defendant's properly supported motion for summary judgment, the plaintiff must come forward with some evidence in support of her claim that the conduct was based on her race.  Jordan points to no evidence from which the court could conclude that the comments were motivated by her race.  The mere fact that Jordan is African-American is insufficient to demonstrate that the comments about which she complains are motivated by her race. *See Miller*, 277 F.3d at 1275 (holding that, to establish a claim for a hostile work

23

environment under Title VII, the plaintiff must establish that he suffered workplace harassment on the basis of his membership in a class protected by Title VII, such as race).

In sum, under the standards applied in this circuit, the comments about which Jordan complain, at best fall under the rubric of mere offensive conduct, were not motivated by her race, and thus, she has failed to create a genuine dispute of material fact about a necessary element which is fatal to her hostile work environment claim. *See Smith*, 644 F.3d at 1329 (holding that the plaintiff in a Title VII employment discrimination case must present "circumstantial evidence that creates a triable issue concerning the [defendant's] discriminatory intent"). Based on the foregoing, the court concludes that the defendant's motion for summary judgment on Jordan's hostile work environment claim is due to be granted.

## V.  CONCLUSION

Accordingly, for the reasons as stated, it is the RECOMMENDATION of the MAGISTRATE JUDGE that the defendants' motions for summary judgment (docs. ## 85 & 87) be and GRANTED and that this case be DISMISSED with prejudice. It is further

ORDERED that defendant Department of Public Health's motion to strike (doc. # 94) be and is hereby DENIED. Finally, it is

ORDERED that the parties shall file any objections to the said Recommendation on or before **August 25, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.

Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of August, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE